Joseph Glen Jones was convicted of robbery in the first degree, and the Court of Criminal Appeals affirmed his conviction, without writing an opinion, 524 So.2d 391. This Court granted the writ of certiorari to examine the propriety of the introduction into evidence of Jones's alleged flight from the police. We affirm.
 FACTS
The evidence tended to show the following: On November 11, 1986, a lone black male wearing a ski mask robbed the Beeline convenience store in Troy, Alabama. In the cash that the robber obtained was a $2.00 bill used by Beeline to mark the money in the store's cash register. Five days later, on November 16, 1986, at approximately 9:00 p.m., State Trooper Ken Kelly noticed a Chevrolet Chevette automobile that had a missing headlight and a missing taillight. Kelley turned on his blue light, but the petitioner, who was driving the Chevette, refused to stop. Kelley turned on his siren but petitioner still made no attempt to stop. There was evidence that petitioner saw Kelley, because Kelley testified that petitioner kept turning around and looking at him. Officer Kelley got in front of the petitioner's car; they were now travelling 65 miles per hour in a 45-mile-per hour zone. Petitioner attempted to ram Kelley's police car, and Kelley drove his car off the road to avoid being rammed. Another officer responded to Kelley's call for assistance. Both police cars gave chase to the petitioner, who was now driving completely in the on-coming traffic lane.
After evading a road block and driving through a red light and someone's front yard, the petitioner exited his car and fled. When the police caught up with him, petitioner took a wad of money from his billfold and threw it into the weeds. The money was recovered by Officer Kelley and taken to the police station. The petitioner *Page 1053 
was charged with robbery in the first degree. Kelley, at trial, identified State's Exhibit # 1 as a $2.00 bill found with the other money. Kelley had initialed the bill.
The robbery in question occurred on November 11, 1986; the petitioner was arrested on November 16, 1986, on the traffic charges. Until the petitioner's apprehension for the traffic violations, he was admittedly not a suspect in the robbery, but was later charged with the November 11 robbery.
At trial on the robbery charge, the state called Deborah Grissett as its first witness. She testified that on November 11, 1986, she was working as a cashier at the Beeline convenience store in Troy. Around 8:30 p.m., a man wearing a ski mask came into the store and demanded the store's money. He had a knife and what looked like a gun wrapped up in white cloth so that only the barrel was sticking out. Grissett emptied the cash register into a brown paper bag. The robber also took the change "bucket" that was kept behind the register. He then left the store.
Grissett testified that a marked $2.00 bill was kept in the cash register in order to identify any money that might be stolen. The $2.00 bill was put in the bag with the rest of the money that the robber took, and, at trial, she identified State's Exhibit # 1 as the $2.00 bill that was put in with the money taken on November 11, 1986. She described the robber as a black male between 5' 6" and 6 feet tall, slender, and weighing about 135 pounds. Ms. Grissett was unable to describe the man's face because he was wearing a ski mask.
Jones claims that it was error for the trial court to admit testimony about his flight from the police officers because, he says, the flight was too remote in time and was not connected with the robbery for which he was tried and convicted. He claims that there is no evidence in the record to indicate anything other than that he thought he was being pursued for driving a car with an expired license (the car belonged to Jones's sister), and that he did not want to get caught because his sister would be angry at him for driving her car and incurring a fine for the traffic violations. The officers admitted that the reason they were chasing Jones was because of the headlight violation, and that Jones was not a suspect in the robbery case until after the $2.00 bill was found.
Evidence of flight has long been allowed in the courts of Alabama, and the State is generally given wide latitude in proving things that occurred during the accused's flight. C. Gamble, McElroy's Alabama Evidence, § 190.01(1) at 381 (3d ed. 1977). However, as Dean Gamble has noted:
 "Logic would dictate that at some point the flight of the accused will be so far removed from the time of the charged crime that such flight will be too remote to be relevant as having probative value upon the accused's consciousness of guilt. However, such a case has not yet made its way before the appellate courts of Alabama."
Id., § 190.01(4) at 383.
One of this Court's first detailed examinations of evidence of flight came in Levison v. State, 54 Ala. 520 (1875); there, this Court stated:
 "Flight, the demeanor when arrested, stolidity or trepidation, under accusation, prevarication in answer to inquiries relating to the offense, or to his conduct, the fabrication or suppression of evidence, or previous threats, or antecedent grudges, are all evidentiary facts against the person to whom they are imputable, dependent for their value on a connection with other criminating circumstances. They are evidence against the party to whom they are imputable, and not constituting the guilty act, only pointing to him as the guilty agent, are not evidence for or against another with whom he has no connection. The most inconclusive of the criminating circumstances, that which, not combined with other factors, is of the least probative force is flight. [Citation omitted.] It may be attributable to fear, or to impatience and restlessness, under the duress of imprisonment, or to a consciousness of guilt. Much depends on the character of the mind, *Page 1054 
temperament and education. One will, with fortitude, endure imprisonment without murmuring, and without an effort to fly, though tortured with the consciousness of crime; while another of a different mental, or moral, or physical organization, conscious of innocence, fretting under unaccustomed restraints, or fearful of the issue of the events leading to his imprisonment, will fly on the first opportunity. Flight is of consequence, in itself, delusive and inconclusive as a criminating fact."
54 Ala. at 527. (Emphasis added.)
In an even earlier case, this Court did hold, however, that care must be taken in introducing evidence like evidence of flight. In Liles v. State, 30 Ala. 24, 24-25 (1857), this Court stated:
 "In determining how far the conduct of a prisoner may be evidence against him, we feel that we are treading on dangerous and doubtful ground. One of acute sensibilities might be overwhelmed by a simple accusation of crime; while a hardened offender would stand unabashed, and undisturbed in muscle, though conscious of the deepest guilt. A respectable modern writer, speaking of the effect produced by imputation of crime, uses the language, that 'it is an impulse of nature, consequent upon extreme surprise, to which the innocent may yield as well as the guilty. It may happen that the more innocent the party, the greater the shock occasioned by such a proceeding.' Burrill on Cir. Ev., 4767; Smith v. The State, 9 Ala. 990-5."
Alabama cases clearly hold that evidence of flight that is not combined with other criminative circumstances has little probative force. Levison, supra. The teaching of Levison, of course, is that care should be used when evidence of flight is presented. The United States Supreme Court has similarly warned, on more than one occasion, of the dangers in the introduction of evidence of flight. In Hickory v. UnitedStates, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896), the Court made a detailed examination of the nature of evidence of flight and ruled that a jury charge that raised evidence of flight into a presumption of guilt was error:
 "In Ryan v. The People, 79 N.Y. 593, considering an objection that the trial court erred in admitting evidence of an attempt to escape from the sheriff, the court said: 'There are so many reasons for such conduct, consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt, but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon the surrounding circumstances. It was not error to admit it.' [Citations omitted.]
 ". . . The modern English law on the subject is referred to in Wills on Circumstantial Evidence, p. 70, citing the opinion of Mr. Baron Gourney in Regina v. Belaney, which is thus recapitulated: 'By the common law, flight was considered so strong a presumption of guilt, that in cases of treason and felony it carried the forfeiture of the party's goods, whether he were found guilty or acquitted; and the officer always, until the abolition of the practice by statute, called upon the jury, after verdict of acquittal, to state whether the party had fled on account of the charge. These several acts in all their modifications are indications of fear; but it would be harsh and unreasonable invariably to interpret them as indications of moral consciousness, and greater weight has sometimes been attached to them than they have fairly warranted. Doubtless the manly carriage of integrity always commands the respect of mankind, and all tribunals do homage to the great principles from which consistency springs; but it does not follow, because the moral courage and consistency which generally accompany the consciousness of uprightness raise a presumption of innocence, that the converse is always true. Men are differently constituted as respects both animal and moral courage, and fear may spring from causes very different from that of conscious guilt, and every man is therefore entitled to a candid construction of his words and actions, particularly *Page 1055 
if placed in circumstances of great and unexpected difficulty.' "
160 U.S. at 417-18, 16 S.Ct. at 330-31.
Further, the United States Supreme Court has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime."Wong Sun v. United States, 371 U.S. 471, 483 n. 10,83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963). Nevertheless, the rule still remains that such evidence is admissible in a proper case.
The basic rule for the introduction of evidence of flight was set forth in the early Alabama case of Bowles v. State, 58 Ala. 335,338 (1877):
 "All evasions, or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves, they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under proper instructions from the court. [Citations omitted.] Flight, for which no proper motive can be assigned, and which remains unexplained, is a circumstance all authorities agree it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused. In the old common law, the rule which passed into a maxim, was, that flight was equivalent to a confession of guilt: fatetur facinus qui judicium fugit. At the present day it is regarded as a mere criminative circumstance, indicative of a consciousness of guilt, and of an attempt to evade justice, which is subject to infirmative considerations that may deprive it of all force."
This basic statement about evidence of flight has remained intact and basically unchanged in the law of Alabama up until this time. It is still the law. Later cases dealing with flight often state little more than the main proposition that such evidence is admissible. See Kelley v. State, 226 Ala. 80,145 So. 816 (1933); Carden v. State, 84 Ala. 417, 4 So. 823 (1887);Sylvester v. State, 71 Ala. 17 (1881).
This case, involving both flight and the commission of another crime, presents an opportunity for us to make a full examination of this rule, especially in regard to evidence of flight involving other crimes.
One of the most recent cases summarizing the Alabama rule on this subject is Beaver v. State, 455 So.2d 253, 257
(Ala.Crim.App. 1984):
 " 'In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution . . . as tending to show the accused's consciousness of guilt. * * * The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight.' C. Gamble, McElroy's Alabama Evidence § 190.01(1) (3rd ed. 1977). 'Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime.' Tate v. State, 346 So.2d 515, 520
(Ala.Cr.App. 1977). Evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused. See Tate, supra; Neal v. State, 372 So.2d 1331, 1344-45
(Ala.Cr.App. 1979). For the same reason, evidence that the accused resisted or attempted to avoid arrest is admissible. Crenshaw v. State, 225 Ala. 346, 348, 142 So. 669 (1932). Additionally, the evidence that the accused was observed at the police station throwing keys in a trash can was admissible. Any act proving or tending to prove the accused's effort or desire to obliterate, destroy, or suppress evidence of a crime is relevant and admissible even if it involves evidence of a separate offense. Watwood v. State, 389 So.2d 549, 551 (Ala.Cr.App.), cert. denied, Ex parte Watwood, 389 So.2d 552 (Ala. 1980)."
Other jurisdictions have reached different results. The Supreme Court of Montana, examining the evidence of flight in regard to multiple offenses in State v. Bonning, 60 Mont. 362,199 P. 274, 275 (1921), overruled on other grounds by State v. *Page 1056 Campbell, 146 Mont. 251, 405 P.2d 978 (1965), stated:
 "As a general proposition, evidence of flight and concealment is admissible as indicating the guilty conscience of the accused; and its value as such evidence lies in the knowledge of the culprit that he has committed an offense and in his fear of apprehension. . . . From this analysis of the reasons for the admissibility of such evidence, the force of the rule that evidence of flight because of one crime cannot be considered on the trial of another and entirely different offense is apparent, as in such case the flight does not disclose any guilty conscience in regard to the offense in question."
The Supreme Court of Idaho concurs in the above rule: "Flight in respect to another and different offense is not to be considered as evidence of guilt of an offense from which there was no flight." State v. Whitney, 43 Idaho 745, 254 P. 525, 527
(1927).
A good statement of the rule concerning the admissibility of evidence of flight when separate offenses are involved appears in United States v. Myers, 550 F.2d 1036 (5th Cir. 1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978):
 "Analytically, flight is an admission by conduct. E. Cleary[,] McCormick on Evidence § 271, p. 655 (rev. ed. 1972). Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior of flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. See generally Miller v. United States, 116 U.S.App.D.C. 45, 48, 320 F.2d 767, 770 (1963); 1 J. Wigmore, Evidence § 173, p. 632 (3d ed. 1940). The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is 'only marginally probative as to the ultimate issue of guilt or innocence.' United States v. Robinson, 154 U.S.App.D.C. 265, 273, 475 F.2d 376, 384 (1973) [Citations omitted.]
 "Nevertheless, in United States v. Ballard, 423 F.2d 127 (5th Cir. 1970), we stated:
 " 'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.' Id. at 133.
[Citations omitted.]
"* * * *
 "Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, see E. Cleary, McCormick on Evidence § 271, p. 655 (rev. ed. 1972), a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences. . . .
 ". . . The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. See generally, Hutchins Slesinger, Some Observations on the Law of Evidence — Consciousness of Guilt, 77 U.Pa. L.Rev. 725, 734-35 (1929). The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense."
550 F.2d at 1049-51.
As Judge Johnson put it in United States v. Borders,693 F.2d 1318, 1325-26 (11th Cir. 1982), cert. denied, 461 U.S. 905,103 S.Ct. 1875, 76 L.Ed.2d 807 (1983):
 "Human experience teaches, however, that not every act of flight constitutes an expression of guilt. . . . Thus, the interpretation to be gleaned from an act of flight should be made cautiously and *Page 1057 
with a sensitivity to the facts of the particular case. . . .
 "The cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. See generally United States v. Martinez, [681 F.2d 1248, 1257 (10th Cir. 1982)] (surveying cases). For example, in United States v. Myers, supra, we held flight evidence inadmissible where the defendant might have fled because of the guilt feelings about a different and unrelated crime that he had committed. . . . An analogous situation occurred in the recent Fourth Circuit case of United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981), which concluded that the trial court had committed error in instructing the jury on flight when at the time of his flight the defendant Beahm had been unaware that he was the subject of a criminal investigation. . . . The Beahm-Myers line of cases thus stands for the proposition that the probative value of flight evidence is substantially weakened if the suspect was not aware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged."
The above cases, both from this state and from other jurisdictions, clearly show that flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces.
The question in this case then becomes whether the evidence of flight here was so remote or so unconnected with the robbery charge that its probative value was outweighed by its prejudicial effect. We do not think so. We think the trial judge did not err in permitting the evidence to be shown in this case.
Clearly, the police chase here was no ordinary chase. Even though the officers did not know at the time of the chase that petitioner was a suspect in the robbery, petitioner's conduct in attempting to flee, and his conduct in discarding the money, was such that a jury could infer that petitioner was attempting to evade the police for some reason other than the one stated. "Any act . . . tending to prove the accused's effort or desire to obliterate, destroy, or suppress evidence of a crime is relevant and admissible even if it involves evidence of a separate offense." Beaver, supra.
While "the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case," and while "the probative value of flight evidence is substantially weakened if the suspect wasnot aware at the time of the flight that he was the subject ofa criminal investigation for the particular crime charged,"United States v. Borders, supra (emphasis added), we believe the facts of this case show that petitioner's conduct in taking extreme measures to evade the police and then attempting to discard money just before he was arrested was admissible.
The judgment of the Court of Criminal Appeals is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.