630 So.2d 78 (1991)
David Walter ROGERS and Donnis George Musgrove
v.
STATE.
6 Div. 736.
Court of Criminal Appeals of Alabama.
May 31, 1991.
Rehearing Denied September 20, 1991.
*79 Tommy Nail, Birmingham, for appellant David Walter Rogers.
Dwight Driskill, Birmingham, for appellant Donnis George Musgrove.
Don Siegelman, Atty. Gen., and Melissa G. Math and Sandra Stewart, Asst. Attys. Gen., for the State.
McMILLAN, Judge.
This is a death penalty.
David Rogers was charged in a two-count indictment with capital murder as follows: Count I charged that he intentionally caused the death of Coy Eugene Barron, by shooting him with a pistol during the course of a burglary, in violation of § 13A-5-40(a)(4), Code of Alabama 1975; and Count II charged that he committed the murder while he was under a sentence of life imprisonment, in violation of § 13A-5-40(a)(6), Code of Alabama 1975. Donnis Musgrove was charged with capital murder, for intentionally causing the death of Coy Eugene Barron, by shooting him with a pistol during the course of a burglary, in violation of § 13A-5-40(a)(4), Code of Alabama 1975. The appellants moved that their cases be consolidated for trial, pursuant to Rule 15.4(b), A.R.Crim. P.Temp. Following a hearing, the trial court granted the motion to consolidate.
The jury found the appellants guilty as charged in the indictments. Thereafter, the jury returned an advisory verdict of death as to both appellants, by a vote of 10 to 2. A sentencing hearing was then held in front of the trial court, wherein the trial court found the existence of the following two aggravating circumstances as to David Rogers: that the capital offense was committed by a person under sentence of imprisonment, and that the capital offense was committed while the appellant was engaged in, or was an accomplice in the commission of, or an attempt to commit, burglary. The trial court found that these two aggravating circumstances existed as to both counts of the indictment against David Rogers. The trial court further found the existence of the following three aggravating circumstances as to Donnis Musgrove: that the capital offense was committed by person under sentence of imprisonment, that the capital offense was committed while the appellant was engaged in, or was an accomplice in the commission of, or in attempt to commit, burglary, and that the appellant had been previously convicted of a felony involving the use of threat or violence to the person. The trial court found the existence of no statutory mitigating circumstances; however, he considered certain nonstatutory mitigating circumstances. Thereafter, the trial court sentenced the appellants to death.
The record indicates that at approximately 4:00 a.m. on September 28, 1986, the victim, Coy Eugene Barron, and his wife were asleep in the bedroom of their home; their baby was sleeping with them in their bed. A 17-year old friend, Jamie Crawford, was staying with them and was asleep on a mattress on the floor of the living room. The door was suddenly kicked in by two men who stated, "Freeze. Everybody against the wall. Don't move." They then approached the bedroom door. The victim had gotten out of bed and was attempting to hold the bedroom door closed, while his wife, holding their baby, stood behind him. The two men *80 pushed into the bedroom, and the victim, who had backed up to a dresser, picked up a bottle as if to throw it at them. Each of the two men fired a gunshot, one of which struck the victim and killed him. The victim's wife testified that one of the men ran out immediately, while the other man pointed a gun at her face, then turned and ran out.

I
The appellants argue that they were denied a fair trial because of the consolidation of their capital cases for trial and sentencing. This is the first case in Alabama in which capital cases of two defendants receiving the death penalty were consolidated; however, we find nothing inherently prejudicial in the consolidation of two capital trials. See Hinton v. State, 548 So.2d 547 (Ala.Cr. App.1988), affirmed, 548 So.2d 562 (Ala.1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). In Hinton, two capital cases against one defendant were consolidated for trial. The consolidation was held not to have been inherently prejudicial, and the Alabama Supreme Court stated that whether a consolidation is improper should be determined on a case-by-case basis, weighing the benefits of judicial economy against any actual and compelling prejudice that the defendant can demonstrate. Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989). See also Gibson v. State, 555 So.2d 784 (Ala.Cr.App.1989).
In Gibson, two defendants, Grady Gibson and Eddie Hart, were jointly indicted for the murder of the same victim in order to recover the proceeds of an insurance policy on her life, a capital offense as defined by § 13A-5-40(a)(7), Code of Alabama 1975. Neither defendant received the death sentence; Gibson was convicted of capital murder and was sentenced to life imprisonment without parole, while Hart was convicted of manslaughter, as a lesser-included offense, and was sentenced to 50 years' imprisonment.
Moreover, the consolidation of capital cases against two defendants has been allowed in other jurisdictions. See Clines v. State, 282 Ark. 541, 669 S.W.2d 883, 884-85 (1984) (on collateral attack, petitioners alleged that Rule 22 of the Arkansas Rules of Criminal Procedure, which gives discretion to the trial court to try defendants jointly in a capital case, unconstitutionally repealed Initiated Act I of 1937, which entitled codefendants in capital cases to separate trials as a matter of right).[1] See also People v. Young, 128 Ill.2d 1, 131 Ill.Dec. 86, 88, 538 N.E.2d 461, 463 (1989) (two of five codefendants were joined in a capital trial; however the State moved for separate sentencing of the defendants and the motion was granted). In Banks v. State, 701 P.2d 418, 425 (Okl.Cr. App.1985), the court held that the trial court properly refused to grant a defendant's motion for severance due to the admission at trial of extrajudicial statements of his codefendant. The court stated:
"When a co-defendant's extrajudicial statements do not implicate the defendant, the trial court does not abuse its discretion by denying a severance. See Riggle v. State, 585 P.2d 1382 (Okl.Cr.1978). In addition, where, as here, confessions are not involved, the mere fact that a co-defendant attempts to escape punishment by inculpating the defendant is not sufficient ground for requiring a severance. Hinds v. State, 514 P.2d 947 (Okl.Cr.1973). We leave the decision to grant or deny severance to the discretion of the trial court, and absence an abuse thereof resulting in prejudice to the defendant, we will not disturb that decision on appeal. Menefee v. State, 640 P.2d 1381 (Okl.Cr.1982)."
In State v. Gretzler, 126 Ariz. 60, 612 P.2d 1023, 1036 (1980), the Arizona Supreme Court held that the trial court properly ordered two codefendants in a capital trial to be tried separately. The Court indicated that the consolidation would have been prejudicial to the defendants under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because one of the codefendants had given "voluminous statements to the police."
In the present case, both of the appellants moved the court to have their cases consolidated *81 for trial. The following transpired prior to trial:
"THE COURT: This is a joint motion to consolidate filed by both defendants, Rogers and Musgrove, by the attorneys for the defendants, Rogers and Musgrove, setting out the grounds which are sufficient for consolidation. I have checked the statute under the consolidation statute and it does not differentiate between capital and non-capital cases so apparently consolidation is a matter that can be considered for a capital case as well as a non-capital case because there was no prohibition from it in the rule.
"Is that the wish of the two attorneys, that thisthese two cases be consolidated for trial?
"[MUSGROVE'S ATTORNEY]: Yes, sir.
"[ROGERS'S ATTORNEY]: Yes, sir; it is.
"[MUSGROVE'S ATTORNEY]: On behalf of Mr. Musgrove it is.
"THE COURT: All right now, Mr. Musgrove, I'll ask you, you have seen or you have discussed with your attorney ... concerning this consolidation motion. Is that what you wish to do in this matter, [to] consolidate these two cases for trial?
"DEFENDANT MUSGROVE: Yes, sir.
"THE COURT: Now, you understand thatand I don't know all the evidence, I understand that there are statements statements could be admitted if another statement was made by someone which might be hearsay if you were tried separately, it might be admissible, but, of course, I will give instructions to the jury as to how it should be considered if that does occur. Do you understand that?
"DEFENDANT MUSGROVE: Yes, sir.
"THE COURT: All right, do you still wish to go forward with your motion to consolidate?
"DEFENDANT MUSGROVE: Yes, sir.
"THE COURT: All right, Mr. Rogers, I'll ask you the same question. Do you wish to consolidate your case with the case of Mr. Musgrove for trial?
"DEFENDANT ROGERS: Yes, sir.
"THE COURT: All right. The same question I asked Mr. Musgrove, if any statement has been made that would be inadmissible because of hearsay otherwise might be admissible if these cases are consolidated with instructions to the jury as to how they will be considered. Do you understand that?
"DEFENDANT ROGERS: Yes, sir.
"THE COURT: All right, does the State wish to be heard on the consolidation motion?
"[PROSECUTOR]: Yes, sir. The State does wish to be heard.
"THE COURT: All right, go ahead.
"[PROSECUTOR]: First of all, and I want to state for the record, the substance of what the statements would be and I'll have to look at something before I proceed.
"THE COURT: I think when you figure it out, just the essence of what the statements were but not as to any person that they were allegedly given to.
"[PROSECUTOR]: Yes, sir; I just want to make sure that these two defendants understand the State intends to produce witnesses at this trial, one being the daughter of Mr. Donnis Musgrove. I believe her name is Tamara Sanford and her husband, Ricky Sanford, who would testify in substance that on an occasion following the shooting of Coy Barron, Mr. Musgrove said to each of them, and I think he said it on separate occasions, I'll stand corrected if the statements indicate otherwise, but he said, in substance, to each of them, that he, in fact, was there the night Coy Barron was killed, that he did have a gun, that the gun was a 9 mm., that he was there with David Rogers, that both of them shot their pistols at Coy Barron but that he, Donnis Musgrove, did not hit Coy Barron, that he did not intend to hit Coy Barron, that he was only intending to scare him and that David Rogers had a .38. We would, also, and, of course, those two statements made by theor the testimony of those two witnesses, would be substantive evidence against Mr. Musgrove but the mention of Mr. Rogers' name in those statements would be hearsay because they were made by Mr. Musgrove and if Mr. Rogers were to be tried separately those statements will *82 be inadmissible against Mr. Rogers. Further, another State's witness, Mr. Billy Don Springer, will testify that while he was in prison with David Rogers, David Rogers had more than one conversation with him and talked with him in detail about the murder of Coy Barron. That among other things that Mr. Rogers mentioned was that, yes, he in fact was present the night Coy Barron was shot, that he was one of the two individuals who kicked his way into the bedroom, that Donnis Musgrove was the other individual present, that both of them were armed. That he, David Rogers, had the .9 mm. but that it was Donnis Musgrove that had the .38 caliber pistol and that he, David Rogers, did not intend to kill Coy Barron and I believe that he was intending to scare him. He said a number of other things that David Rogers told him including the fact that both of these witnesses intended to be his alibi witnesses from the State of Florida and/or documents from the State of Florida attesting that they were not in the state of Alabama when the crime was committed and, of course, Billy Don Springer's testimony would not be admissible against Donnis Musgrove if Donnis Musgrove were to be tried separately from David Rogers. It is obvious to the State, and I think to anyone, because I think the law is such, that these statements will be highly prejudicial to both defendants; however, the admission made by one defendant obviously would be admissible against him. The admissions made by another defendant would not be admissible against the first defendant. By being tried together, it's the State's position, first of all, that all the testimony comes in from all the three witnesses that have been named. Further, that none of the testimony be redacted or stricken such that it could be confusing to the jury. In other words, the State is asking this Court if the motion is to be granted, in all fairness to the State of Alabama, even though a curative instruction should be given to the jury that they should disregard the hearsay testimony against both of the defendants, it would be absolutely unfair to the State of Alabama to somehow change those statements or redact those statements so that the jury would not hear from all three of these witnesses about the other defendant, the hearsay portion of it. In other words, we're saying everything comes in. Judge, I want to make sure that these individuals know that as far as I know the law of the United States of America is still such that the State, if we move to have these cases joined, could not have those statements admitted into evidence without their being changed or redacted such that any reference to the other defendant in the hearsay portion be stricken for the jury. I just want to make sure that they understand that and, Judge, I'm still not certain that these two individuals can voluntarily waive their rights in that regard. I think it very well may be reversible error and I would ask the court to further inquire of these two defendants if they know what they are doing, and I know that the two defense attorneys certainly would not try to put reversible error into the record, but I don't want to see a situation like that created where if convictions are gained against either or both of these defendants somewhere down the road they come back in front of an Appellate Court and say either we did not understand what we were doing or we received bad advice from our attorneys, that they didn't know what they were doing. They advised us to do this. I want to make dead clear certain on the record that none of that occurs if these men are sent forth forward to the electric chair."
"...
"...
"THE COURT: ...
"Now, again, I'll ask Mr. Musgrove, after having heard what the prosecutor said in this case, do you wish to follow through with your motion and still ask that these cases be consolidated?
"DEFENDANT MUSGROVE: Yes, sir.
"THE COURT: Mr. Rogers, I'll ask the same of you?
"DEFENDANT ROGERS: Yes, sir.
"THE COURT: I think there is sufficient grounds for these cases to be consolidated *83 so I am going to consolidate these cases for trial...."
During the course of the trial, Billy Don Springer was allowed to testify to the evidence against David Rogers, as proffered by the prosecutor. The trial court gave the jury limiting instructions that the testimony could only be considered in the case against David Rogers. Another witness was allowed to testify that when the killing occurred David Rogers was serving a sentence, as required by Count II of the indictment against him, and the trial court instructed the jury that that evidence could be considered only in the case against David Rogers. Another witness testified at trial that, over two months before the date of the present offense, the witness was at his home working on a car. He testified that Donnis Musgrove and another individual drove to his house, where Donnis Musgrove struck him in the head with a gun. The witness testified that the gun went off when he was struck in the head. He testified that afterwards he filed a report with the police. The State subsequently introduced evidence that when Donnis Musgrove came under investigation for the present offense, a police officer, accompanied by a man who was trained in the use of a metal detector, searched the yard for the bullet. The bullet was ultimately recovered and was determined to have been fired from one of the guns used in the present offense. The trial court instructed the jury that the testimony of the witness allegedly struck by Donnis Musgrove was only to be considered in the case against Donnis Musgrove.
"If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may no later than seven (7) days, prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard."
Rule 15.4(b), A.C.Crim.P. Temp. Moreover, pursuant to Rule 15.4(a), defendants may be charged in the same indictment:
"(i) if they are alleged to have participated in the same act or transaction; or
"(ii) when the several offenses are a part of a common conspiracy, scheme, or plan; or
"(iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other."
Where defendants are properly joined in the same indictment, they may be jointly tried. Rule 15.4(c), A.R.Crim.P. Temp.
"`The trial of multiple defendants carries "substantial risks of manifest unfairness." United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir.1977). "Inherent in every joint trial is, of necessity, some degree of bias. Only in the event such prejudice appears to be compelling does severance become warranted." United States v. Marszalkowski, 669 F.2d 655, 660 (11th Cir.1982).
"`"Although the risk of prejudice, either from the jury's perception of evidentiary spillover or transference of guilt, exists in any joinder of offenses or defendants, the trial court weighs that risk against the interest of judicial economy. In reviewing improper denial of severance claims, courts of appeals require that the defendant demonstrate that the trial court abused its discretion by showing that the failure to sever resulted in compelling prejudice....
"`"The defendant bears a difficult burden in attempting to show that joinder of defendants or charges created substantial or compelling prejudice. The defendant fails to meet this burden if he merely asserts that acquittal is more likely if he is tried in a separate action or that much of the prosecution's evidence relates to only one of the codefendants. Compelling prejudice requiring severance does not result when the evidence against the codefendant is more damaging than against the defendant, or when the prosecution introduces *84 into evidence a codefendant's past criminal record or reputation....
"`"Severance may be required when codefendants' inconsistent defenses are prejudicial because they are mutually exclusive and irreconcilable or might mislead or confuse the jury. The defendant may demonstrate the level of antagonism requiring severance by showing that the jury had to disbelieve testimony offered in behalf of a codefendant in order to believe the core of evidence offered by the defendant. In determining whether prejudice resulting from jury confusion requires severance, courts focus on whether the jury reasonably could be expected to `compartmentalize' the evidence and charges against each defendant. Courts also consider the effectiveness of the jury instructions, the complexity of the case, and the total weight of evidence against each defendant."
"`"Twelfth Annual Review Of Criminal Procedure: United States Supreme Court and Courts of Appeals 1981-1982, 71 Geo.L.J. 339, 494-98 (1983)."
"`The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts. McLaurin, 557 F.2d at 1075. The trial judge must weigh the prejudice attendant to a joint trial against the interests of judicial economy. "Of necessity, this balancing process is committed in the first instance to the sound discretion of the trial judge, and an appellate court will not substitute its own judgment for that of the lower court absent an affirmative showing that the lower court has abused its discretion." McLaurin, 557 F.2d at 1075.'"
Gibson v. State, 555 So.2d 784, 795 (Ala.Cr. App.1989), quoting Holsemback v. State, 443 So.2d 1371, 1377-78 (Ala.Cr.App.1983).
In the present case, the defendants moved to have their cases consolidated, despite the prosecutor's statements of concern. However, they were given ample opportunity to be heard and were clearly informed of the possible repercussions. They were properly joined pursuant to Rule 15.4(a) because they were alleged to have participated in the same offense, pursuant to a common scheme.
The appellants never moved for severance. Both appellants raised the same alibi defense, relying on the same alibi witnesses and testimony, and both effectively attacked the validity and propriety of their identifications by the victim's wife in a pretrial lineup.
The invited error rule has been applied equally in capital cases and noncapital cases. See Gibson v. State, 555 So.2d 784 (Ala.Cr. App.1989) (defendant Hart, who was convicted of capital murder and sentenced to manslaughter, was estopped by the invited error doctrine from claiming that manslaughter is not a lesser-included offense of capital murder, because he requested the manslaughter instructions); McGahee v. State, 554 So.2d 454 (Ala.Cr.App.), affirmed, 554 So.2d 473 (Ala.1989) (defendant, who was convicted of two counts of capital murder and sentenced to death, was estopped because he alleged error in the admission of a witness's statement that was made in response to defense counsel's question); Thomas v. State, 460 So.2d 207 (Ala.Cr.App.1983), affirmed, 460 So.2d 216 (Ala.1984) (defendant, who was convicted of capital murder and sentenced to death, was barred by the invited error doctrine from claiming error in the trial court's instruction concerning the legal effect of a deadlock, where the instruction was given pursuant to the defendant's request); Spears v. State, 428 So.2d 174 (Ala.Cr.App.1982) (defendant, who was convicted of capital murder and sentenced to life without parole, was estopped by the invited error doctrine from claiming error in the trial court's dispensing with the jury during the sentencing phase, because the defendant had requested that this be done). But see Ex parte Johnson, 507 So.2d 1351 (Ala.1986) (Alabama Supreme Court held that the fact that counsel for defendant convicted of capital murder and sentenced to death knew that a fingerprint card contained prejudicial information did not constitute invited error, because, although *85 there was an inference that defense counsel might have intentionally waived the error, there was an equal inference that defense counsel did not recognize the error).
In the present case, the defendants were clearly informed of the possible repercussions of the consolidation of their cases and, with this knowledge, they decided to pursue their motion to consolidate. Thus, the appellants are estopped from asserting error on appeal, because they invited the error they now complain of.

II
The appellants allege that their constitutional rights were violated by the erroneous admission of evidence of flight, which included evidence of unrelated, collateral offenses, by the prosecution. The record indicates that, prior to trial, the appellants moved to suppress the State's evidence concerning flight, including evidence of numerous collateral offenses, on the basis that that evidence was remote, irrelevant, and unduly prejudicial. During the trial, a hearing was held on the motion, and the prosecutor made a proffer of the evidence that he intended to present on this matter. The trial court voiced grave concerns about the admissibility of the evidence, but allowed the prosecutor to introduce the evidence before the jury. This evidence indicated that the alleged flight took place two months following the offense. Both appellants had escaped from work release and were traveling in a stolen vehicle. No warrant had been issued on the appellants concerning the present case; however, they were wanted on unrelated charges. Moreover, the chief investigator in this case testified that when the alleged flight took place, the only evidence the authorities had concerning these appellants was a tentative identification made by the victim's wife from a photographic array. However, the investigator testified at trial that the victim's wife "wasn't positive when she picked out" the two appellants and further indicated that "she couldn't positively pick them out or say they were the people that came into her house that morning back in September." He testified that she further stated that she wanted to see a lineup before she could positively identify the perpetrators.
The officer who pursued the appellants during the alleged flight was allowed to testify that he observed the appellant in the passenger seat climb into the back seat and that he observed what appeared to be the outline or silhouette of a gun in that appellant's hand. He testified, however, that he was never aware of any gunshots, although after the car was searched, cracks were found in the rear windshield which could have been caused by bullets. A chase ensued, and the appellants were eventually apprehended as they emerged from a wooded area. There was also testimony that two guns and three bullet fragments or casings were recovered from the stolen vehicle in which the appellants were traveling. Tests were run on the guns and bullets, and it was determined that neither of the guns were used in the instant offense, nor were any of the bullets found in the vehicle fired from the guns used in the instant offense. Thus, the State was allowed to introduce evidence that the appellants were fleeing from the police in a high speed chase, were traveling in a stolen vehicle, appeared to have fired gunshots at the pursuing officer, and were found with weapons in the car. However, none of the evidence obtained from the chase connected the appellants to the instant offense.
In Ex parte Smith, 581 So.2d 531 (Ala. 1991), the Alabama Supreme Court noted that even if evidence of a collateral offense fits within an exception to the general exclusionary rule, its probative value must outweigh its prejudicial effect in order to be admissible. Id. at 535, quoting Robinson v. State, 528 So.2d 343 (Ala.Cr.App.1988). In Ex parte Jones, 541 So.2d 1052 (Ala.1989), the Alabama Supreme Court addressed the balancing of probative value against prejudicial effect, as it relates to evidence of flight. The Court stated:
"A good statement of the rule concerning the admissibility of evidence of flight when separate offenses are involved appears in United States v. Myers, 550 F.2d 1036 (5th Cir.1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978):

*86 "`Analytically, flight is an admission by conduct. E. Cleary[,] McCormick on Evidence § 271, p. 655 (rev. ed. 1972). Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior of flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. See generally Miller v. United States, 116 U.S.App.D.C. 45, 48, 320 F.2d 767, 770 (1963); 1 J. Wigmore, Evidence § 173, p. 632 (3d ed. 1940). The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is "only marginally probative as to the ultimate issue of guilt or innocence." United States v. Robinson, 154 U.S.App.D.C. 265, 273, 475 F.2d 376, 384 (1973) [Citations omitted.]
"`Nevertheless, in United States v. Ballard, 423 F.2d 127 (5th Cir.1970), we stated:
"`"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." Id. at 133.
"`[Citations omitted.]
"`....
"`Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, see E. Cleary, McCormick on Evidence § 271, p. 655 (rev. ed. 1972), a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences....
"`... The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. See generally, Hutchins & Slesinger, Some Observations on the Law of EvidenceConsciousness of Guilt, 77 U.Pa.L.Rev. 725, 734-35 (1929). The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.'
"550 F.2d at 1049-51.
"As Judge Johnson put it in United States v. Borders, 693 F.2d 1318, 1325-26 (11th Cir.1982), cert. denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983):
"`Human experience teaches, however, that not every act of flight constitutes an expression of guilt.... Thus, the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case....
"`The cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. See generally United States v. Martinez, [681 F.2d 1248, 1257 (10th Cir.1982)] (surveying cases). For example, in United States v. Myers, supra, we held flight evidence inadmissible where the defendant might have fled because of the guilt feelings about a different and unrelated crime that he had committed.... An analogous situation occurred in the recent Fourth Circuit case of United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir.1981), which concluded that the trial court had committed error in instructing the jury on flight when at the time of his flight the defendant Beahm had been unaware that he was the subject of a criminal investigation.... The Beahm-Myers line of cases thus stands for the proposition that the probative value of flight evidence is substantially weakened if the suspect was not aware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged.'

*87 "The above cases, both from this state and from other jurisdictions, clearly show that flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces."
Id. at 1056-57. Thus, the Court determined that whether to admit evidence of flight is to be determined on a case-by-case basis, considering whether the "evidence of flight ... was so remote or so unconnected with the... charge that its probative value was outweighed by its prejudicial effect." Id. at 1057.
In the present case, when the chase occurred, no warrants had been issued against the appellants for the instant offense, nor had any concrete evidence been uncovered by the authorities to promote their apprehension in connection with this offense. Moreover, the flight occurred two months after the offense. Therefore, the appellants clearly could have had no knowledge that they were wanted for this offense, so as to have precipitated the flight. The appellants had escaped from work release and were traveling in a stolen vehicle. The prejudicial effect of the evidence concerning all of the collateral offenses is doubtless, while the probative value is extremely dubious. "The only possible inference that can be drawn from such evidence is that [these appellants were] more likely to commit the offense charged than what might otherwise have been the case." Ex parte Tomlin, 548 So.2d 1341, 1343 (Ala. 1989) (Alabama Supreme Court held that evidence that the defendant committed two drug-related offenses more than 10 years before the present charge was too remote to satisfy the relevancy of the evidence). Because this evidence concerning the flight and collateral offenses connected thereto should not have been admitted at trial, this cause is reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.

ON APPLICATION FOR REHEARING
McMILLAN, Judge.
On rehearing, the State makes a number of arguments concerning the validity of this Court's holding, including claims regarding the factual basis of this Court's decision. Specifically, the State argues that the appellant cannot claim as error the admission of certain evidence, because the evidence was offered by the appellant. While it is true that the fact that the vehicle the appellants were driving was stolen and the fact that the appellants had escaped from work release were ultimately presented to the jury by defense counsel on cross-examination of the officer who gave chase, this information was conveyed only after the prosecutor had already elicited on direct examination that the appellants were travelling in excess of 100 miles per hour, were driving recklessly, and were found with guns and ammunition in the vehicle, and that the man in the passenger seat had apparently fired shots at the pursuing officer. The trial court had ruled that the State could provide testimony concerning these facts, which testimony had been proffered by the prosecutor. The defense counsel's action in eliciting the testimony concerning the facts that the vehicle was stolen and that the appellants were escapees was apparently an attempt to negate the prejudicial effect of the testimony on direct examination, by attempting to show the jury that the flight in this instance was not connected to the capital offense for which the appellants were charged. Again, because of the prejudicial nature of this evidence, we cannot hold that its admission was harmless.
APPLICATION OVERRULED; RULE 39(K) MOTION GRANTED; OPINION EXTENDED.
All the Judges concur.
NOTES
[1] Alabama has no rules or acts which deal with consolidation strictly in a capital murder context. Rule 15.4, A.R.Crim.P. Temp., provides for consolidation under certain circumstances, but does not distinguish between capital and noncapital offenses.