In a consolidated case, David Walter Rogers and Donnis George Musgrove were convicted of capital murder (the facts of the case are not at issue here) and were sentenced to death. In the Court of Criminal Appeals, they raised two issues — (1) whether they had been denied a fair trial because of the consolidation of their capital cases for trial and sentencing and (2) whether the trial court had erred in admitting evidence of flight that included evidence of unrelated collateral offenses. In a lengthy opinion, the Court of Criminal Appeals found no error regarding the consolidation of the defendants' capital cases and sentencing, but reversed because of the admission of flight evidence 630 So.2d 78. In its opinion, the Court of Criminal Appeals wrote:
 "In the present case, when the chase occurred, no warrants had been issued against the [defendants] for the instant offense, nor had any concrete evidence been uncovered by the authorities to promote their apprehension in connection with this offense. Moreover, the flight occurred two months after the offense. Therefore, the [defendants] clearly could have had no knowledge that they were wanted for this offense, so as to have precipitated the flight. The [defendants] had escaped from work release and were travelling in a stolen vehicle. The prejudicial effect of the evidence concerning all of the collateral offenses is doubtless, while the probative value is extremely dubious. 'The only possible inference that can be drawn from such evidence is that [the defendants were] more likely to commit the offense charged than what might otherwise have been the case.' Ex parte Tomlin, 548 So.2d 1341, 1343 (Ala. 1989) (. . . evidence that the defendant committed two drug-related offenses more than 10 years before the present charge was [held to be] too remote to satisfy the [requirement of] relevancy of *Page 89 
the evidence). Because this evidence concerning the flight and collateral offenses connected thereto should not have been admitted at trial, this cause is reversed and remanded."
(Emphasis added.) Thereafter, the Court of Criminal Appeals overruled the state's application for rehearing, but granted the state's Rule 39(k), Ala.R.App.P., motion and issued an extended opinion. In the extended opinion, addressing the state's arguments concerning the Court of Criminal Appeals' holding on what the state contended were "erroneous findings of fact," the Court of Criminal Appeals again stated that "because of the prejudicial nature of this [flight] evidence, we cannot hold that its admission was harmless." Subsequently, the state petitioned for the writ of certiorari, which we granted in order to address the Court of Criminal Appeals' reversal of the convictions based on its holding that the trial court erred in admitting evidence of flight and evidence of the collateral offenses connected thereto.
The facts pertinent to a resolution of the issue in this case are as follows:
On September 28, 1986, the victim, Coy Eugene Barron, was killed by one of several bullets fired by the defendants. During the defendants' consolidated trial for the capital murder of Barron, over defense counsel's objection the state introduced evidence that on November 22, 1986, approximately two months after Barron was killed, a dramatic chase between the defendants and a state trooper occurred and that that chase ended in the capture of the defendants. The state's evidence showed that a state trooper, noticing a vehicle with only a "dealer's display tag" travelling in front of him, pulled alongside the vehicle, observed the driver and the passenger, and then signalled the driver to stop. The defendants sped away, with the state trooper in pursuit; he pursued them for approximately 30 miles, with the vehicles reaching speeds in excess of 100 miles per hour. According to the state trooper, during the chase the windows that had been previously rolled up had been rolled down; the passenger, holding what appeared to be a large handgun, moved to the rear seat of the vehicle and repeatedly fired the handgun at him. The automobile chase ended with the defendants' vehicle mired in mud in a pasture; the defendants fled on foot. Within minutes, 20-30 law enforcement officers arrived on the scene, walked to the vehicle, looked inside it, and saw two boxes of ammunition (.44 magnum and .357 magnum) on the floorboard. Thereafter, the officers searched the area, found the defendants, and took them into custody. An inventory of the contents of the vehicle produced a 9-millimeter semi-automatic pistol and a .25 caliber semi-automatic pistol in a metal ammunition box from the trunk of the vehicle; two empty 18-round clips for the 9-millimeter pistol; two partially filled boxes of ammunition (one box contained fourteen .44 caliber magnum bullets and one contained thirty-nine .357 caliber magnum bullets). When the inventory was conducted, three projectiles (or the portions of bullets known as bullet jackets) were removed from the right rear taillight assembly of the vehicle. Testimony established that the inside of the rear of the vehicle contained three marks, each approximately two inches long and a quarter inch wide, all within a 10-12 inch circumference, slightly off center, and located behind the right passenger side of the vehicle on the same side where the bullet jackets were recovered from the taillight area; and that "shiverous material" (pieces of lead smaller than bullets, or shivers) was found inside the vehicle. The Alabama Department of Forensic Sciences determined that the three bullet jackets recovered from the vehicle had been fired from the same barrel, but that the bullet that killed the victim had been fired from a different barrel. Further testimony established that the vehicle in which the defendants were travelling had been stolen; that both defendants were escapees from state work release programs (Musgrove had escaped in June 1986 — approximately five months before the chase; Rogers had escaped in August 1986 — approximately three months before the chase); and that around September 29, 1986 (approximately two months before the chase), the defendants had become named suspects in the capital murder case.
The defendants contend that in this case the evidence of flight was so remote from, or so unconnected with, the killing of Barron *Page 90 
two months before the chase that its probative value was outweighed by its prejudicial effect. They base their contention on the fact that as armed escapees from work release programs travelling in a stolen vehicle, they faced the risk of reincarceration and criminal charges for escape, and their claim that this risk established other plausible explanations for their flight; on the fact that there was no evidence in the record that they knew that they were named suspects in the investigation of the underlying capital murder; and on the fact that their flight occurred two months after the underlying capital murder. They contend that these facts make the third inference of guilt discussed in Ex parte Jones, 541 So.2d 1052
(Ala. 1989) — the inference of consciousness of guilt concerning the crime charged, drawn from consciousness of guilt — extremely weak, and therefore make the evidence of flight inadmissible.
The state contends that the reversal of the defendants' convictions based on this admission of flight evidence and evidence of collateral offenses by the defendants directly conflicts with the holding in Ex parte Jones, supra. The state also contends that the defendants' arguments to the contrary are based on a misreading of Ex parte Jones — that the inferences of guilt referred to by this Court in Ex parte Jones
do not affect the admissibility of flight evidence, but affect only the probative value and the weight that evidence is due. Furthermore, the state contends that Ex parte Jones does not hold, as the defendants contend, that the remoteness of the flight compared to the charged crime affects the admissibility of the flight evidence; rather, the state contends that Exparte Jones holds that the amount of time between the crime charged and the flight from apprehension is merely another factor for the jury to evaluate in determining the weight to give the evidence of flight — that remoteness of evidence goes to the weight to be given to the evidence rather than to its admissibility, and that that is an issue properly left to the jury.
In Ex parte Jones, 541 So.2d at 1053-57, Justice Maddox, writing for the Court, fully examined the basic rule for the introduction of flight evidence (especially in regard to evidence of flight involving other crimes, as in this case), and addressed the balancing of the probative value of that evidence against its prejudicial effect:
 "Evidence of flight has long been allowed in the courts of Alabama, and the State is generally given wide latitude in proving things that occurred during the accused's flight. C. Gamble, McElroy's Alabama Evidence, § 190.01(1) at 381 (3d ed. 1977). However, as Dean Gamble has noted [§ 190.01(4) at 383]:
 " 'Logic would dictate that at some point the flight of the accused will be so far removed from the time of the charged crime that such flight will be too remote to be relevant as having probative value upon the accused's consciousness of guilt. . . .
". . . .
 "Alabama cases clearly hold that evidence of flight that is not combined with other criminative circumstances has little probative force. The teaching of Levison [v. State, 54 Ala. 520 (1875)], of course, is that care should be used when evidence of flight is presented. The United States Supreme Court has similarly warned, on more than one occasion, of the dangers in the introduction of evidence of flight. . . . Further, the United States Supreme Court has 'consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime.' . . . Nevertheless, the rule still remains that such evidence is admissible in a proper case.
 "The basic rule for the introduction of evidence of flight was set forth in the early Alabama case of Bowles v. State, 58 Ala. 335, 338 (1877):
 " 'All evasions, or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves, they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under *Page 91 
proper instructions from the court. [Citations omitted.] Flight, for which no proper motive can be assigned, and which remains unexplained, is a circumstance all authorities agree it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused. In the old common law, the rule which passed into a maxim, was, that flight was equivalent to a confession of guilt: fatetur facinus qui judicium fugit. At the present day it is regarded as a mere criminative circumstance, indicative of a consciousness of guilt, and of an attempt to evade justice, which is subject to infirmative considerations that may deprive it of all force.'
 "This basic statement about evidence of flight has remained intact and basically unchanged in the law of Alabama up until this time. It is still the law. Later cases dealing with flight often state little more than the main proposition that such evidence is admissible.
 "This case [Ex parte Jones], involving both flight and the commission of another crime, presents an opportunity for us to make a full examination of this rule, especially in regard to evidence of flight involving other crimes.
 "One of the most recent cases summarizing the Alabama rule on this subject is Beaver v. State, 455 So.2d 253, 257 (Ala.Crim.App. 1984):
 " ' "In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution . . . as tending to show the accused's consciousness of guilt. The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight." C. Gamble, McElroy's Alabama Evidence § 190.01(1) (3rd ed. 1977). "Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime." Tate v. State, 346 So.2d 515, 520 (Ala.Crim.App. 1977). Evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused. For the same reason, evidence that the accused resisted or attempted to avoid arrest is admissible. Additionally, the evidence that the accused was observed at the police station throwing keys in a trash can was admissible. Any act proving or tending to prove the accused's effort or desire to obliterate, destroy, or suppress evidence of a crime is relevant and admissible even if it involves evidence of a separate offense.'
 "Other jurisdictions [specifically, Montana and Idaho] have reached different results. . . .
 "A good statement of the rule concerning the admissibility of evidence of flight when separate offenses are involved appears in United States v. Myers, 550 F.2d 1036 (5th Cir. 1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978):
 " 'Analytically, flight is an admission by conduct. Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior of flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is "only marginally probative as to the ultimate issue of guilt or innocence."
 " 'Nevertheless, in United States v. Ballard, 423 F.2d 127 (5th Cir. 1970), we stated:
 " ' "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." Id. at 133. [Citations omitted.]
" '. . . . *Page 92 
 " 'Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences. . . .
 " '. . . The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.'
"550 F.2d at 1049-51.
 "As Judge Johnson put it in United States v. Borders, 693 F.2d 1318, 1325-26 (11th Cir. 1982), cert. denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983):
 " 'Human experience teaches, however, that not every act of flight constitutes an expression of guilt. . . . Thus, the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case. . . .
 " 'The cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. . . . . The Beahm-Myers line of cases [United States v. Myers, supra, and United States v. Beahm, 664 F.2d 414 (4th Cir. 1981)] thus stands for the proposition that the probative value of flight evidence is substantially weakened if the suspect was not aware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged.'
 "The above cases, both from this state and from other jurisdictions, clearly show that flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces."
(Citations omitted.) (Emphasis added.)
Thus, in this case, as in Ex parte Jones, supra, at 1057, "[t]he question . . . becomes whether the evidence of flight here was so remote or so unconnected with the [crime now charged] that its probative value was outweighed by its prejudicial effect." As in Ex parte Jones, we think not. Rather, we hold that, under the facts in this case in which the defendants took extreme measures to evade the police — where the chase was no ordinary chase and, even though the defendants did not actually know that they had been named as suspects in the capital murder, their conduct in fleeing and their conduct in firing at the state trooper pursuing them was such that a jury could infer from it that they were attempting to evade law enforcement officers for some reason other than the ones they stated — the trial court properly admitted the flight evidence and the evidence of collateral offenses.
We note that the Court of Criminal Appeals based its holding regarding the flight evidence on its interpretation of Ex parteJones, supra. However, based on the foregoing, we find that court's interpretation erroneous. Therefore, we reverse the judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.