[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 897 
The appellant, Lisa Gail Lockhart, was convicted by a jury for trafficking in methamphetamine, a violation of §13A-12-231(11)(a), Code of Alabama 1975, as charged in the indictment. The trial court sentenced the appellant to three years' imprisonment.
The evidence introduced at trial showed the following:
On August 6, 1996, Richard Raley, a manager of the Opelika division of the United Parcel Service (U.P.S.), received a package listing the appellant as the addressee. The address label on the package was incomplete because it did not contain the county road number necessary for U.P.S. to deliver the package to the appellant's home. The package listed Wendy Johnson of El Centro, California, as the sender. According to office procedure, Mr. Raley opened the package in hopes of finding information that could lead to a discovery of the proper shipping address. Upon opening the package, Mr. Raley found what appeared to be two types of illegal drugs and five gold rings. The drugs were inside a clear jar and the gold rings were attached to the outside of the jar.
Mr. Raley contacted Detective Aris Murphy of the Opelika Police Department and told him about the discovery. Detective Murphy went to the U.P.S. delivery center, determined that the two substances in the jar were narcotics, and then delivered the package to Taylor Noggle of the Alabama Department of Forensic Sciences. Mr. Noggle concluded that the two substances were methamphetamine and marijuana. Although he did not know the exact monetary value of the drugs, Mr. Noggle did testify that the quantity of marijuana was worth up to $1,250 and valued the methamphetamine "in the thousands of dollars," depending on the quality of the drug at the time of its distribution. The methamphetamine weighed approximately 94 grams.
After discovering the drugs and the gold rings, Mr. Raley sent a postcard to the appellant through the United States mail service, informing the appellant that U.P.S. was holding a package for her and requesting that she call Mr. Raley and provide a complete shipping address. On the morning of August 9, 1996, the appellant telephoned Mr. Raley at U.P.S. and told him "that she was expecting a package that had not been delivered yet."[1] After Mr. Raley acknowledged that they were holding a package for her, the appellant gave him her complete address and *Page 898 
asked if the package could be delivered that day. Mr. Raley explained that it was not possible to deliver the package that day, but told her that she could come by herself and pick it up at the delivery center. The appellant and Mr. Raley agreed that she would arrive at the center around 10:00 that morning to pick up the package.
After his telephone conversation with the appellant, Mr. Raley contacted Detective Murphy and told him that the appellant had called and would be picking up the package that day. Detective Murphy and two other law enforcement officers set up surveillance outside the delivery center and waited for the appellant's arrival.
The appellant arrived as scheduled and requested the package. Mr. Raley again explained to the appellant the reason U.P.S. could not deliver the package on that day. After examining the package and the address label, the appellant responded, "Yes, they forgot to put the Lee [County] Road number." Mr. Raley described the appellant's demeanor as being that of a normal customer picking up a package. The appellant then signed for the package and went outside the delivery center, where Detective Murphy and the other officers arrested her. At her arraignment hearing on October 24, 1996, the appellant entered a plea of not guilty and was released on bond. Trial was initially scheduled for November 22, 1996. However, the appellant fled to Ohio after her release and failed to appear for trial. The appellant was eventually apprehended, and she was convicted on February 11, 1997. Before trial, the appellant made a motion in limine requesting that the trial judge exclude any evidence of her flight. The trial court denied the motion. The appellant also moved for a judgment of acquittal at the close of the State's case. The trial court denied this motion as well. The appellant rested her case without presenting any evidence. During closing argument for the State, the appellant objected on the grounds that certain comments made by the prosecutor improperly shifted the burden of proof to the defense. The trial court overruled this objection. The appellant raises three issues on appeal.
 I.
First, the appellant argues that the trial court erred by denying her motion for a judgment of acquittal because the State failed to establish a prima facie case for the charge of trafficking in methamphetamine. Specifically, the appellant argues that the State failed to present sufficient evidence that she knew the package contained drugs. We disagree.
In Ward v. State, this court stated:
 "The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App. 1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App. 1983). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979)."
610 So.2d 1190, 1191 (Ala.Cr.App. 1992).
 "Whenever the sufficiency of evidence is in question, the evidence must be reviewed in the light most favorable to the State. Any conflicting evidence presents a jury question that is not subject to review on appeal so long as the State's evidence establishes a prima facie case. In determining whether the State presented a prima facie case, an appellate court must accept as true the evidence introduced by the State, accord the State all legitimate inferences from that evidence, and consider the *Page 899 
evidence in the light most favorable to the State. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
Carden v. State, 621 So.2d 342, 347 (Ala.Cr.App. 1992).
The State charged the appellant with violating §13A-12-231(11), Code of Alabama 1975, which provides, in pertinent part:
 "Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of methamphetamine or any mixture containing methamphetamine, its salts, optical isomers, or salt of its optical isomers thereof, is guilty of a felony, which felony shall be known as 'trafficking in methamphetamine.' "
It is undisputed that the appellant was in actual possession of a package containing 94 grams of methamphetamine. The only issue, then, is whether there was sufficient evidence that the appellant knew that the methamphetamine was inside the package when she claimed it at the U.P.S. center.
" ' "[K]nowledge by the accused of the presence of the controlled substances is an essential element and prerequisite [for a] conviction for the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act." ' " Bright v. State, 673 So.2d 851, 852 (Ala.Cr.App. 1995) (citation omitted). "Because the element of knowledge is seldom susceptible to direct proof, it may be proved by evidence of acts or conduct of the accused from which it may fairly be inferred that he knew of the existence of the narcotics at the place where they were found." Walker v. State,356 So.2d 674, 676 (Ala.Cr.App. 1977), cert. denied,356 So.2d 677 (Ala. 1978). Therefore, proof of knowledge is usually established by circumstantial evidence. Donahoo v. State,552 So.2d 887, 892 (Ala.Cr.App. 1989), citing Walker, 356 So.2d at 675. See also, White v. State, 611 So.2d 439, 440 (Ala.Cr.App. 1992); and Marks v. State, 575 So.2d 611, 618 (Ala.Cr.App. 1990).
 "Circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App. 1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
Ward, 610 So.2d at 1191-92.
Alabama law is not entirely clear as to what type of circumstantial evidence is sufficient to prove that a defendant had knowledge of drugs contained in a parcel addressed to and ultimately possessed by a defendant. This court has previously stated in Walker, though, that "the fact that the accused is named as the addressee of a parcel containing a controlled substance is insufficient to show that his possession and control was accomplished by knowledge on his part that the parcel contained narcotics." Walker, 356 So.2d 674, 675
(Ala.Cr.App. 1977). The rationale behind this rule is clear. If knowledge could be inferred simply from the fact that the defendant received a package containing drugs, a conviction would not be based on the defendant's culpable conduct. Rather, the conviction would be based solely upon the criminal actions of the sender of the package. See Walker, 356 So.2d at 675. "Obviously, in a jurisprudential system dependent upon substantive due process, criminal consequences cannot be permitted to attach to an everyday and commonplace occurrence over which one has no control, such as . . . the unanticipated receipt of mail." State v. Richards, 155 N.J. Super. 106,382 A.2d 407 (App.Div.), cert. denied, 77 N.J. 478, 391 A.2d 493
(1978).
However, the Walker court also recognized that evidence of attendant circumstances may be shown from which a jury could draw an inference that at the time of taking possession of the package, the defendant had knowledge of its contents. *Page 900 
 "Although the mere fact that the accused received a package addressed to him, or another, in the course of normal mail or parcel delivery does not, standing alone, suffice to show knowledge of any contraband contained in the package, the fact of receipt when coupled with additional facts and factors may produce circumstances from which it may be fairly inferred that the requisite knowledge was present. [For example,] [t]he inference may arise where there is an attempt by the addressee to secrete the package after accepting delivery, State v. Doerge, 11 Or. App. 602, 504 P.2d 766 (1972), or that a note to the addressee found inside the package indicated that code words should be used in future conversations and in the billfold of the addressee was found a card bearing the name and address of the sender, State v. Collins, 186 Neb. 50, 180 N.W.2d 687
(1970)."
Walker, 356 So.2d at 676.
Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence from which the jury could reasonably have concluded that the appellant knew the package contained narcotics. First, the appellant's own admissions and conduct indicate guilty knowledge. During their telephone conversation, the appellant told Mr. Raley that "she was expecting a package that had not been delivered yet." (Emphasis supplied.) Based on this admission, a jury could fairly infer the appellant knew of the package's contents because she eagerly anticipated its arrival.[2] See Walker, 356 So.2d at 676 (knowledge may be inferred by a defendant's declarations, admissions, explanations, or contradictory statements). When told that the package would have to be delivered the following day, the appellant arranged to pick up the package herself, unsatisfied with a delay in delivery. Knowledge of the drugs could be fairly inferred from the fact that the appellant wanted possession of the package as soon as possible. The record also indicates that the appellant had examined the package when she stated to Mr. Raley, "[T]hey forgot to put [her county road] number." Displaying conduct of a normal customer picking up a package, the appellant showed no signs of surprise in receiving a package from a Wendy Johnson in El Centro, California.
Second, the value of the contents of the package gives rise to a reasonable inference that the drugs were not sent to the appellant by mistake or as a set-up intended to impose criminal liability. The record indicates that the total value of the methamphetamine, marijuana, and five gold rings was in the thousands of dollars. We recognize today, as this court did inWalker, that the jury could not have relied solely upon this evidence in inferring guilty knowledge if no other attendant circumstances existed indicating that the appellant knew of the drugs in the package. However, the appellant's own admission that she was "expecting" the arrival of the package provides the necessary attendant circumstances. In light of this admission and based on the value of the package's contents, a jury could reasonably conclude that an individual in California would not send a package containing such valuable items across the nation to an Alabama resident unless that resident was expecting it and knew what the package contained.
Finally, a jury could reasonably infer guilty knowledge from the fact that the appellant fled from this state prior to her first trial date. A jury may infer a consciousness of guilt from all attempts to flee from prosecution by a person suspected or charged with a crime, provided that other "criminating facts" exist surrounding the flight. See Ex parteJones, infra., 541 So.2d 1052, 1055 (Ala. 1989). Here, the necessary criminating facts are supplied by the appellant's own admissions and by her conduct discussed above. Therefore, evidence of the appellant's flight gives rise to a reasonable inference of guilt for the crime charged. It follows that this inference extends to the individual elements composing the crime, including the knowledge *Page 901 
that there were drugs contained in the package.
Based on the totality of the evidence in this case, we find that there was sufficient circumstantial evidence from which a jury could reasonably infer that the appellant knew there were drugs in the package and that the jury could reasonably exclude every hypothesis but that of guilt. The evidence offered by the State was sufficient to present "a question of fact for the jury and one which we cannot overturn." Walker, 356 So.2d at 676 (citations omitted). While the determination of whether any evidence exists to support a conviction is a question of law, the assessment of the probative value and weight of that evidence is left solely for the jury. See Washington v. State,55 Ala. App. 116, 313 So.2d 544 (Ala.Cr.App. 1975). We note that the trial judge adequately instructed the jury that before it could convict the appellant, it must be convinced beyond a reasonable doubt that the appellant knew the substance contained in the package was methamphetamine. This court is in no position to disturb the jury's finding that the appellant had such knowledge.
Therefore, the trial court properly denied the appellant's motion for a judgment of acquittal.
 II.
Second, the appellant argues that the trial court abused its discretion in admitting evidence of her flight to Ohio following her arrest and release. Specifically, the appellant argues that the flight evidence was inadmissible under Rule 403, Ala. R. Evid., because it was too remote and unconnected with the crime charged. This argument is without merit.
In Ex parte Jones, 541 So.2d 1052 (Ala. 1989), the Alabama Supreme Court thoroughly examined Alabama law pertaining to the admissibility of flight evidence:
 " 'All evasions, or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves, they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under proper instructions from the court. [Citations omitted.] Flight, for which no proper motive can be assigned and which remains unexplained, is a circumstance all authorities agree it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused.' "
Jones, 541 So.2d at 1055, quoting Bowles v. State, 58 Ala. 335,338 (1877). However, the court also warned against automatically admitting evidence of flight: " 'Human experience teaches, however, that not every act of flight constitutes an expression of guilt. . . . Thus, the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case.' "Jones, 541 So.2d at 1056-57 (quoting United States v. Borders,693 F.2d 1318, 1325-26 (11th Cir. 1982), cert. denied,461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983)). In certain circumstances, "flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces."Jones, 541 So.2d at 1057. The probative value of a defendant's flight is drastically reduced and its prejudicial impact increased where the defendant is not aware at the time of the flight that he or she was the suspect in a criminal investigation for the particular crime charged. Id., citingBorders, supra. In addition, " '[t]he more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.' " Jones, 541 So.2d at 1056 (quoting United States v.Myers, 550 F.2d 1036 (5th Cir. 1977)).
After applying the legal principles of Jones to the facts of this case, we hold that the trial court properly admitted evidence of the appellant's flight. First, the evidence as to flight was relevant to show the appellant's consciousness of guilt for the crime she committed. *Page 902 
As a consequence of her flight, the appellant missed her first scheduled trial date, forcing law enforcement officials to apprehend her and bring her back into this state to stand trial. Second, the evidence of the appellant's flight was not so prejudicial as to outweigh its probative value. At the time of her flight, the appellant was well aware of the charges pending against her: she was indicted, arraigned and released on bail after entering a plea of not guilty. Furthermore, the appellant's flight was not too remote from the commission of the offense. The Alabama Supreme Court has recently held that evidence of flight occurring two months after commission of the crime was not so remote as to render it inadmissible.Rogers v. State, 630 So.2d 88, 90 (Ala. 1992), reversing Rogersv. State, 630 So.2d 78 (Ala.Cr.App. 1991). See also Ex parteWeaver, 678 So.2d 284 (Ala. 1996) (evidence of flight is admissible even although several days have passed since commission of the crime). The record indicates that the appellant fled this state, at most, one month after committing the crime. The appellant did not suffer any undue prejudice from the introduction of this evidence.
Based on the facts and circumstances in this case, the trial court did not abuse its discretion by admitting evidence of the appellant's flight.
 III.
Finally, the appellant argues that the trial court erred by "making the element of knowledge an affirmative defense." The appellant essentially argues that by allowing the State to make certain comments during closing arguments, the trial court erred to reversal by transforming the element of knowledge into an affirmative defense as to which the appellant bore the burden of proof. This argument is without merit.
During the State's rebuttal to defense counsel's closing argument, the following exchange took place:
 "[State]: The defense says, well, you know, we don't have any admissions. That's right. We don't have any explanation whatsoever. We don't have any alternate theories upon which to base reasonable doubt. At all. Reasonable doubt will be defined for you for the Court as best it can be defined because it's one of those things that's very hard to define. But it's not a doubt based on guess work or speculation. Without alternative theories, you will have to guess at alternative theories and create for yourself reasonable doubt.
 "[Defense Counsel]: Your Honor, I am going to object. This is — argument is shifting the burden to — to the Defendant.
 "The Court: Ladies and Gentlemen, what the lawyers say to you is not the law; what I say to you is; so it's not evidence what the lawyers say, but they do have a chance to argue the case. Go ahead. Overruled."
A reviewing court must evaluate allegedly improper comments made by the prosecutor in the context of the entire proceeding in which the comments were made. Duren v. State, 590 So.2d 360
(Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992). " 'In judging a prosecutor's closing argument, the standard is whether the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471,91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo,416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).
 "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438
(Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App. 1980), cert. denied, 404 So.2d 100 (Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in *Page 903 
the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982)."
Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App. 1989), aff'd in relevant part, remanded on other grounds, 585 So.2d 112, 127
(Ala. 1991), aff'd on return to remand, 625 So.2d 1141
(Ala.Cr.App. 1992).
 " 'During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Rutledge v. State, 523 So.2d 1087, 1100
(Ala.Cr.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. Racine v. State, 290 Ala. 225, 275 So.2d 655 (1973). 'In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, . . . each case must be judged on its own merits,' Hooks v. State, 534 So.2d 329, 354
(Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (citation omitted) (quoting Barnett v. State, 52 Ala. App. 260, 264, 291 So.2d 353, 357 (1974)). . . . 'In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.' Mitchell v. State, 480 So.2d 1254, 1257-58
(Ala.Cr.App. 1985) (citations omitted). 'To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted.' Twilley v. State, 472 So.2d 1130, 1139 (Ala.Cr.App. 1985) (citations omitted)."
Coral v. State, 628 So.2d 954, 985 (Ala.Cr.App. 1992).
After thoroughly reviewing the record, this court cannot say that the prosecutor's comments, when viewed in the context of the entire trial and not in the abstract, substantially and unfairly prejudiced the defendant so as to require reversal. As noted, the allegedly improper comments took place during the State's rebuttal to defense counsel's closing argument. Therefore, the prosecutor was exercising the right afforded to the State to comment on the evidence as presented in the defense counsel's closing argument. See Rutledge, supra. In addition, the prosecutor's comments were merely an attempt to simplify the concept of reasonable doubt for the jury.
Furthermore, any prejudice the appellant might have suffered from the prosecutor's comments was eliminated by the trial court's curative instruction immediately following the appellant's objection. The trial court promptly instructed the jury that the closing arguments made by either attorney did not constitute the law or evidence; rather, the law would be defined for them by the court. Also, during its charge to the jury, the trial court properly instructed the jury that the State had the burden of proving the appellant guilty beyond a reasonable doubt and that the appellant bore no such burden:
 "When [the] indictment was returned by the Grand Jury and sent to this Court, the Defendant entered a plea of not guilty, and by virtue of her entering that plea, it casts the burden of proof on the State of Alabama to satisfy each one of you beyond a reasonable doubt of her guilt. The Defendant has no burden of proof. She comes in this court presumed to be innocent. And that presumption stays with her until such time as each one of you is satisfied beyond a reasonable doubt. That presumption of innocence is evidence that you may consider on the Defendant's behalf.
". . . .
 "And the State must prove that the Defendant had knowledge of the presence of the drugs in that box. Knowledge by the accused of the presence of the drugs is an essential element and a prerequisite to conviction for this offense."
(R. 163-64, 166.) A jury is presumed to follow the instructions provided by the trial court. Taylor v. State, 666 So.2d 36
(Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).
We find that the prosecutor's comments during closing argument did not unfairly *Page 904 
prejudice the appellant so as to make her conviction a violation of due process of law.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
All judges concur.
[1] It is not entirely clear from the record whether the appellant called on her own volition or in response to the postcard.
[2] As noted previously, it is not clear whether the appellant placed the telephone call to U.P.S. on her own volition or in response to the postcard sent from U.P.S. However, it is the content of the appellant's statement that raises the inference of knowledge, regardless of what prompted her to make the statement.