The appellant, David D. Payne, was convicted of four counts of fraudulent use of a credit card, violations of §13A-9-14(b), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve concurrent terms of ten years in prison. See § 13A-5-9(b)(1), Ala. Code 1975. The appellant *Page 932 
filed an untimely motion for a new trial.[1] This appeal followed.
The State presented evidence that Donald Lolley and his son owned Circle L Quail Farm, Incorporated, and that Andre Hogue worked for Lolley. Lolley testified that, on the morning of January 14, 2004, he told Hogue to take his truck to get a part and to take that part to Elba; that he gave Hogue one of the company's BP gasoline credit cards and told him to use it to buy gasoline for the truck; that the card had the business' name on it, and he had signed his name on the back of the card; that his truck did not have his business' name on it at that time; that Hogue left between 8:15 a.m. and 8:30 a.m.; and that Hogue did not return. (R. 42.) He also testified that, on the morning of January 15, 2004, he found out that Hogue had gotten the part, but he had not gone to Elba; that he made a police report regarding the unauthorized use of his vehicle; that, around 8:00 a.m. on January 15, 2005, he telephoned BP to cancel the credit card he had given Hogue; that the credit card was not canceled until approximately 8:30 p.m.; and that the card was used seven times on January 15, 2004. Lolley further testified that he did not know the appellant; that the appellant was not authorized to use the credit card; that Hogue was the only person who was authorized to use that credit card; and that his employees knew that they were not supposed to use company credit cards for anything other than purchases for the business vehicle. Finally, he testified that he had looked at the receipts from the January 15, 2004, purchases; that the receipts had different names on them; that some of the receipts had the name "Andrew Mills" on them; and that he did not know anyone named Andrew Mills. (R.47.)
Lieutenant Ron Sanders of the Hartford Police Department testified that he became involved in the investigation regarding the gasoline card on January 21, 2004; that Lolley showed him a printout that showed purchases that had been made with the card on January 15, 2004; that six of the seven purchases had been made at a BP gasoline station in Hartford; and that he went to that gasoline station and spoke to the clerk, Martha Davis. He also testified that Davis showed him the receipts for six purchases; that the first receipt was dated January 14, 2004, and the other five receipts were dated January 15, 2004; that some of the receipts were signed by Andre Hogue and others had been signed "Andrew Mills"; and that one of the receipts had a partial signature of "David" and then the signature "Andrew Mills" underneath it. Finally, Sanders testified that he obtained the gasoline station's security videotapes for January 14, 2004, and January 15, 2004; that he watched the videotapes; and that the appellant was the person who made some of the purchases that corresponded with the receipts signed "Andrew Mills."
Martha Davis testified that she worked at Al's BP gasoline station in Hartford; that, on January 15, 2004, the appellant, another man, and a young woman were at the station; that the other man pumped the gasoline; that the appellant used a credit card that had the name "Circle L Quail Farm" on it to make purchases; that the appellant signed the receipts "Andrew *Page 933 
Mills"; and that the appellant used the credit card to purchase gasoline, drinks, and snacks. She also testified that, at one point, another vehicle came to the station; that the driver of that vehicle asked if he could fill his vehicle with gasoline; and that the appellant and the other man said, "`[Y]eah, go ahead.'" (R. 88.)
The appellant testified that, on January 15, 2004, he was at his father's house; that Hogue came to his father's house in a truck that had a business sign on it; that he had never met Hogue before that; that Hogue asked about buying parts from his father's vehicle; that, when he told Hogue that his father would not sell parts off of that vehicle, Hogue told him that he needed money to buy a fuel pump for his work truck; that Hogue asked him for money, but he told him that he did not have any money; that Hogue told him that he had a BP gasoline credit card, but he could only use the card to buy gasoline and things from the gasoline station; that Hogue offered to sell gasoline for one dollar a gallon; that he knew some people who might be interested, and he took Hogue to meet them; that some people agreed to buy gasoline from Hogue; and that he drove four vehicles to the BP gasoline station, put gasoline in them, signed receipts for the gasoline, and gave Hogue cash for the gasoline. He also testified that he did not know that the credit card was stolen; that he knew that Hogue worked for the company because he was wearing a suit and because the name of the company was on Hogue's shirt, the truck, and the credit card; that Hogue told him to sign the receipts "Andrew Mills"; that he thought that Hogue's name was Andrew Mills; and that he did not know Hogue's real name until he later went to court.
 I.
The appellant argues that the State did not present sufficient evidence to support his convictions. Specifically, he contends that the State did not prove that he was not authorized to use the credit card and that he knew that he was not authorized to use the credit card.
 "A person commits the crime of fraudulent use of a credit card or debit card if he or she uses, attempts to use, or allows to be used, a credit card or debit card for the purpose of obtaining property, services, or anything else of value with knowledge that:
 "(1) The card is stolen; or
 "(2) The card has been revoked or cancelled; or
 "(3) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit card or debit card is issued."
§ 13A-9-14(b), Ala. Code 1975.
 "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant *Page 934 
guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App. 1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State."
Breckenridge v. State, 628 So.2d 1012, 1018
(Ala.Crim.App. 1993).
 "`In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala. 1985).
 "`. . . .
 "`"The role of appellate courts is not to say what the facts are. Our role, . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury." Ex parte Bankston, 358 So.2d 1040, 1042
(Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." Kelly v. State, 273 Ala.240, 244, 139 So.2d 326 (1962). . . . A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense." Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).' Granger [v. State], 473 So.2d [1137,] 1139 [(Ala.Crim.App. 1985)].
 ". . . `Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.' White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). `Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.' Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App. 1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala. 1985)."
White v. State, 546 So.2d 1014, 1017
(Ala.Crim.App. 1989). Also,
 "`[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App. 1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).'
 "Ward, 610 So.2d at 1191-92."
Lockhart v. State, 715 So.2d 895, 899
(Ala.Crim.App. 1997). Finally, *Page 935 
 "`[i]ntent, . . . being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' McCord v. State, 501 So.2d 520, 528-529 (Ala.Cr.App. 1986), quoting Pumphrey v. State, 156 Ala. 103, 47 So. 156 (1908)."
French v. State, 687 So.2d 202, 204
(Ala.Crim.App. 1995), aff'd in part, rev'd in part on other grounds,687 So.2d 205 (Ala. 1996).
 "`The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. McMurpky v. State, 455 So.2d 924 (Ala.Crim.App. 1984); Craig v. State, 410 So.2d 449 (Ala.Crim.App. 1981), cert. denied, 410 So.2d 449 (Ala.Crim.App. 1982).' Loper v. State, 469 So.2d 707, 710 (Ala.Cr.App. 1985)."
Oryang v. State, 642 So.2d 989, 994
(Ala.Crim.App. 1994).
In this case, the State presented evidence that, on January 14, 2004, Lolley gave Hogue his truck and a company credit card and told him to use the credit card to put gasoline in that truck; that the truck did not have a sign on it; that Hogue did not return with the truck or the credit card; that the credit card had the business' name on the front and was signed on the back by Lolley; that, on January 15, 2004, the appellant used that credit card to make four purchases at the BP gasoline station in Hartford; that the appellant signed the receipts with the name Andrew Mills; that, on one of those receipts, the appellant initially signed the name David, but stopped and signed the name Andrew Mills underneath that; that the appellant and Hogue allowed another man to use the credit card to purchase gasoline; and that Lolley did hot authorize the appellant to use that credit card. Based on this evidence, the jury could have reasonably concluded that the appellant had used the credit card to obtain property; that he was not authorized to use the credit card; and that he knew that the person to whom the card was issued had not authorized him to use the credit card. Further, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So.2d 189, 214
(Ala.Crim.App. 1996), aff'[d, 698 So.2d 219 (Ala. 1997). Therefore, the State presented sufficient evidence to support the appellant's convictions.
To the extent the appellant challenges the weight of the evidence, his argument is not properly before this court.
 "The issue of the weight of the evidence is preserved by a motion for a new trial, stating `that the verdict is contrary to law or the weight of the evidence.' See [Ala.] R. [Crim.] P. 24.1(c)(1)."
Zumbado v. State, 615 So.2d 1223, 1241
(Ala.Crim.App. 1993). Although the appellant filed a motion for a new trial in which he challenged the weight of the evidence, that motion was not timely. Therefore, he did not preserve this argument for our review.
For the above-stated reasons, we affirm the appellant's convictions.
 II.
The appellant also argues that the trial court erroneously sentenced him as a habitual offender. The record indicates, and the State concedes, that the two prior Florida convictions that were used to enhance the appellant's sentences were based on nolo contendere pleas. Therefore, the State asks this court to remand this case for the appellant to be resentenced without the use of his prior Florida convictions. *Page 936 
 "The Alabama Supreme Court has held that a conviction based upon a plea of nolo contendere cannot be used in Alabama to enhance punishment under the Habitual Felony Offender Act. Ex parte Jenkins, 586 So.2d 176, 177 (Ala. 1991). See also, e.g., Kain v. State, 700 So.2d 355, 356 (Ala.Cr.App. 1996); McHarris v. State, 678 So.2d 259, 260
(Ala.Cr.App. 1996)."
McCray v. State, 738 So.2d 911, 916
(Ala.Crim.App. 1998). Because the appellant's two prior Florida convictions were based on nolo contendere pleas, the trial court erred when it used those convictions to enhance his sentences. Accordingly, we remand this case to the trial court with instructions that it conduct a new sentence hearing and sentence the appellant without the application of the Habitual Felony Offender Act. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the new sentencing hearing.[2]
REMANDED WITH INSTRUCTIONS.*
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
[1] The trial court pronounced the sentences in these cases on May 20, 2005, and it entered the sentences on the case action summary sheets on May 31, 2005. The appellant filed his motion for a new trial on June 23, 2005. "A motion for a new trial must be filed no later than thirty (30) days after sentence ispronounced." Rule 24.1(b), Ala. R.Crim. P. (emphasis added). Because the appellant did not file his motion within thirty days after the trial court pronounced his sentences, that motion was not timely.
[2] Based on our holding that the appellant's prior Florida convictions could not properly be used to enhance his sentences because they were based on nolo contendere pleas, we need not address his argument that the State did not properly prove that those convictions were not youthful offender adjudications.
* Note from the reporter of decisions: On June 16, 2006, on return to remand, the Court of Criminal Appeals affirmed, without opinion.
 *Page 437