WELCH, Judge.
Broderick Sylvester Brown was indicted on two counts of felony murder. The indictment alleged that, during the course of a second-degree burglary and a robbery, he or his accomplice shot and killed Sam Richardson. See § 13A-6-2(a)(3), Ala. Code 1975. The jury found Brown guilty of both counts. The trial court sentenced Brown to 32 years’ imprisonment on each count, the sentences to be served concurrently. The trial court also ordered Brown to pay court costs and a $50 assessment to the Alabama Crime Victims Compensation Fund.

FACTS

On November 22, 2011, at about 3:45 p.m., Benjamin Melton walked toward Sam Richardson’s barbershop in Prichard. He looked in, the front window and saw a young man, later identified as Andrew Amison, inside Richardson’s shop “rambling” through and “picking up things.” (R. 204.) As Melton approached the door, he saw Amison step over something and then, squeeze his way out of the door. Amison walked out of the shop and took a few steps as Melton began to walk in. Melton saw Richardson’s body behind and up against the door; his head lay in a puddle of blood. Melton looked at Amison, and Amison ran down the street and around the corner. Melton then ran outside in an attempt to locate Amison, and he telephoned emergency 911. He encountered Houston Langham, who was in a truck stopped at a traffic light, and he *105 asked Langham which way Amison had run. Langham told Melton that he had seen two young men, whom he later identified as Amison and Brown, jumping over a fence behind the barber shop. Langham began to follow the men, and Melton returned to the shop. Richardson was dead.
Langham identified Brown as one of the two young men he followed that day. He followed them in his truck, watching them jump fences and run through yards. At some point, he reached an intersection just as Brown and Amison crossed, and Brown asked Langham why he was following them. Langham replied he was looking for an address. Brown fumbled in his pocket and Langham was concerned he might have a weapon. Langham continued to follow them from a distance, and saw them stop on a main road. A Chevy Impala automobile pulled up, and the men got into the car. Langham wrote down the tag number and drove to the Prichard police station. Two other witnesses identified Brown as the man they saw running with Amison through the backyards and alleys of the neighborhood that afternoon.
Tamarcus Dickerson testified that he was the driver of the Impala and that he picked up Brown and Amison that afternoon. He and his girlfriend were just out riding around, he said, when Brown and Amison ran out into the street, and Brown asked Dickerson to drop them off. Dickerson stated that he knew Brown but not the other man. Just after Brown and the other man got into his backseat, Dickerson saw a pickup truck coming up behind him at a high rate of speed, so he turned the corner. A short time later he told the two men to get out of his car.
In the barbershop, police found a cabinet with the hinges pried open and the lock still intact. No shell casings or fingerprints were found, and all blood at the scene was Richardson’s. Nothing was found that indicated the identity of the killer or killers. Richardson’s keys, wallet, and cellular telephone had been stolen and were never found. Fragments of two bullets were found in the victim’s head and neck, but they were so small and deformed that neither their caliber nor whether they were fired from the same gun could be determined.
Police apprehended Brown in the weeks after the murder when he was trespassing at a high school. Brown tried to run from the officers but was caught. At the police station, Brown waived his Miranda[1] rights and spoke to police, telling them that he had only heard about Richardson’s murder on the news. He declined further comment and was arrested for felony murder. No stolen property was found in Brown’s possession or in his house. However, Brown made a phone call from the jail, and he told Joshua Scott, his cousin and best friend, to get rid of the evidence related to “this murder.” (R. 397.) Although Brown never mentioned exactly what Scott was to get rid of, Scott seemed to know what Brown referred to, and assured Brown that he had already gotten rid of it. They also discussed where he and Brown might have been during the time of the murder, indicating an attempt to establish an alibi for Brown. The voice on the telephone call to Scott was positively identified as Brown’s. A recording of the telephone conversation between Brown and Scott was played for the jury.

ANALYSIS

I

In Issue III, Brown contests the trial court’s admission of the recording and the transcript of Brown’s telephone call from *106 the jail to his cousin. He states that the evidence was not properly authenticated and that it was unsupported hearsay.
Brown’s objection based on hearsay grounds is not properly before us for review. Brown did not object at trial based on hearsay grounds, and the statement of the specific grounds on which he did object waived all grounds not specified. Ex parte Coulliette, 857 So.2d 793, 795 (Ala.2003). Therefore, Brown has preserved nothing for this Court to review as to this claim of error.
Although Brown’s argument that the jailhouse telephone call was not properly authenticated was preserved for review, Brown is not entitled to relief. The State properly authenticated Brown’s voice as the one on the recording as required by Rule 901, Ala. R. Evid. Rule 901(a), Ala. R. Evid., provides: “The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” The Rule further provides:
“[T]he following are examples of authentication ... conforming with the requirement of the Rule:
[[Image here]]
“(5) Voice Identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
“(6) Telephone Conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called....”
Rule 901(a)(5), (a)(6), Ala. R. Evid.
A witness identifying the parties to a recorded conversation is not required to be someone who overheard or participated in the conversation. See, e.g., Paige v. State, 621 So.2d 372, 373 (Ala.Crim.App.1993).
The detective who gathered intelligence in the Mobile County jail testified that Brown’s PIN number was used to place the call to Scott in which the caller told Scott to dispose of the evidence related to the murder. He further testified that the voice on all the calls placed using Brown’s PIN number was the same voice, and that that voice was consistent with the one in the recorded conversation with Scott.' Furthermore, the officer who took an oral statement from Brown identified the voice on the audio recording of the telephone call to Scott as Brown’s voice. Therefore, the recording was properly authenticated, and no error occurred when the trial court admitted it and the transcript of the call into evidence.

II

Brown argues in Issue IV that the trial court erred when it denied his motion for a mistrial, which he made during the State’s opening argument. He argues that in her opening statement the prosecutor bolstered the testimony of a witness, a friend of Brown’s, and improperly referred to the friend’s identification of Brown in a photographic lineup.
When the prosecutor referred to the identification of Brown in a lineup, Brown objected. The prosecutor withdrew the remark, and the trial court instructed the jury to disregard it. Brown argued that the jury would not be able to follow the *107 trial court’s instruction and moved for a mistrial, which the trial court denied.
It is well settled that a mistrial is a drastic remedy reserved for only the most prejudicial instances the trial court deems, in its sound discretion, to be too egregious and detrimental to the defendant’s case to be eradicated by a jury instruction. The trial court’s grant or denial of a motion for a mistrial is within its sound discretion and will be disturbed only where it is shown that the ruling exceeds the bounds of discretion. See Melson v. State, 775 So.2d 857, 889 (Ala.Crim.App.1999), and cases cited therein.
The trial court did not exceed its substantial discretion when it denied Brown’s motion for a mistrial after the prosecutor withdrew the comment and the court instructed the jury to disregard it. The comment was not egregious, and it did not undermine the defense in any way. Furthermore, this witness was Brown’s friend and testified at trial that he knew Brown because they used to go to school together. Moreover, Brown’s identity as the man who ran from the scene and who was picked up in a car along with Amison was never in dispute. Thus the alleged error in the prosecutor’s statement was not so egregious and prejudicial that it could not be cured by a proper instruction, and the jury received a proper instruction. Brown is not entitled to any relief on this claim of error.

Ill

Brown argues in Issue VI that the trial court failed to give several of his requested jury instructions addressing accomplice liability. Brown is raising this argument for the first time. Rule 21.3, Ala. R.Crim. P., requires that, before the jury retires to consider its verdict, a party must object to the court’s failure to give a written instruction and must state specific grounds for the objection. Because Brown did not object at trial to the court’s failure to give certain of his requested instructions, he preserved nothing for this Court’s review.

IV

In Issues I, II, and V, Brown merges arguments that the trial court erred when it denied his motions for a judgment of acquittal and that the evidence did not support the jury’s verdict. Specifically, he argues that the evidence against him was circumstantial and that the State did not present sufficient evidence to show that he was an accomplice in the murder.
A. To the extent Brown challenges the weight of the evidence and the jury’s verdict, the issue is not properly before us. The record reveals that Brown failed to file a motion for a new trial challenging the weight of the evidence, as required by Rule 24.1, Ala. R.Crim. P. Therefore, that argument was not preserved for our review. See, e.g., Douglas v. State, 900 So.2d 1271, 1272-73 (Ala. Crim.App.2004).
B. Brown claims that the trial court erred when it denied his motions for a judgment of acquittal. Specifically, Brown argues that the State’s evidence established nothing more than that he was present with Amison in a field after Amison left the barbershop where Richardson’s body was found and did not establish that he rendered any assistance to Amison.
When ruling on a motion for a judgment of acquittal, this Court must review the evidence in the light most favorable to the State. Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978). Moreover, circumstantial evidence is not inferior evidence but is to be given the same weight as direct evidence and is considered along with other evidence. Circumstantial evi *108 dence may be held sufficient to support a conviction. Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1998).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). 'When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979).’”
Lockhart v. State, 715 So.2d 895, 898 (Ala.Crim.App.1997) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)). See also Johnson v. State, 994 So.2d 950, 953-54 (Ala.Crim.App.2007).
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense ... [h]e aids or abets such other person in committing the offense.” § 13A-2-23(2), Ala.Code 1975. While the mere presence of a person at the time and place of a crime does not make him a party to the crime, we recognize that “[community of purpose may be formed in a flash, and participation and community of purpose may be shown by circumstantial evidence or inferred from the conduct of the participants.” Sanders v. State, 423 So.2d 348, 351 (Ala.Crim.App.1982).
“ ‘[I]n Alabama, an individual who is present with the intent to aid and abet in the commission of an offense is as guilty as the princip[al] wrongdoer.’ Price v. State, 725 So.2d 1003, 1055 (Ala. Crim.App.1997), aff'd, 725 So.2d 1063 (Ala.1998). ‘The words “aid and abet” encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary.’ Henry v. State, 555 So.2d 768, 769 (Ala.Crim.App.1989). ‘The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Rather, the jury must examine the conduct of the parties and .the testimony, as to the surrounding circumstances to determine its existence.’ Miller v. State, 405 So.2d 41, 46 (Ala.Crim.App.1981) (citation omitted). ‘The jury is to determine whether .the appellant’s participation exists and the extent of it from the conduct of the parties and all the testimony presented.’ Walls v. State, 378 So.2d 1186, 1191 (Ala.Crim.App.1979). ‘Such facts as the defendant’s presence in connection with his companionship, his conduct at, before, and after the commission of the act, are potent circumstances from which participation may be inferred.’ Sanders v. State, 423 So.2d 348, 351 (Ala.Crim.App.1982).”
Harris v. State, 854 So.2d 145, 151 (Ala. Crim.App.2002).
*109 The State was required to prove a prima facie case of felony murder. As this Court has stated:
“ ‘A felony-murder is committed when a person commits or attempts to commit one of several enumerated felonies, and, in the course of or in furtherance of the crime or in flight from the crime, that person causes another person’s death.’ Knotts v. State, 686 So.2d 431, 457 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996). ‘Felony murder requires an intent to commit the underlying felony,’ Saunders v. State, 10 So.3d 53, 95 (Ala. Crim.App.2007), but does not necessarily require an intent to kill.”
Morton v. State, 154 So.3d 1065, 1081 (Ala. Crim.App.2013).
The State’s evidence was sufficient to show Brown’s willing participation in this crime as an accomplice. He was not just a bystander. Brown was just outside the barber shop when Amison fled after robbing and killing Richardson during the burglary of his shop, and he immediately joined Amison and they ran from the scene. They ran together through yards and fields, and they jumped over fences together. Brown was still with Amison when Brown confronted Langham as he followed them. Brown fumbled in his pocket, which caused Langham to fear he had a gun, and he stopped following the men. Brown flagged down Dickerson to give them a ride, and he then evaded capture. Weeks later, when Brown saw police officers at a school he did not attend, he ran, but was apprehended. Finally, Brown telephoned his cousin from jail and told him to dispose of the evidence related to the murder.
From the foregoing evidence presented by the State, the jury could have easily inferred that Brown was an accomplice in the crimes. Therefore, the trial court did not err when it denied Brown’s motions for a judgment of acquittal and submitted the case to the jury.
C. Although Brown does not raise this issue, double-jeopardy principles have been violated as a result of Brown’s two convictions and sentences for felony murder. Double-jeopardy violations are jurisdictional errors that this Court has a duty to notice. See, e.g., Ex parte Robey, 920 So.2d 1069 (Ala.2004).
We previously addressed the issue presented in this case.
“In Ex parte Rice, 766 So.2d 143 (Ala. 1999), the Alabama Supreme Court held that § 13A-6-2(a)(3), Ala.Code 1975, creates a single offense, even though it provides alternative methods of proving the offense. The supreme court also held that double jeopardy principles prohibit multiple convictions and multiple sentences for felony-murder if the convictions and sentences arise from a single killing. In this case, the appellant was convicted of one count of felony-murder during a robbery and one count of felony-murder during the commission of a felony that was clearly dangerous to human life — discharging a firearm into an occupied vehicle. Both convictions arose from the murder of Speigner. Therefore, he could not properly be convicted of and sentenced for two counts of felony-murder. The trial court sentenced the appellant to serve concurrent terms of life in prison. However, in Rice, the supreme court held:
“ ‘We note that merely ordering that Rice’s sentences run concurrently is not a constitutionally acceptable option. The Supreme Court stated in Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):
“ ‘ “The remedy of ordering one of the sentences to be served concur *110 rently with the other cannot be squared with Congress’ intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See Missouri v. Hunter, 459 U.S. 359, 368[, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983).
“ ‘ “The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant’s eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant’s credibility and certainly carries the societal stigma accompanying any criminal conviction. See Benton v. Maryland, 395 U.S. 784, 790-91[, 89 S.Ct. 2056, 23 L.Ed.2d 707] (1969); Sibron v. New York, 392 U.S. 40, 54-56[, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.”
“ ‘See, also, Rolling v. State, [673 So.2d 812 (Ala.Crim.App.1995) ].
“ ‘Neither is it an acceptable option to merely vacate one of Rice’s convictions and its corresponding sentence. The jury specifically found that Rice had violated § 13A-6-2(a)(3) in two different ways—by participating in a kidnapping and causing Taylor’s death and by participating in a robbery and causing Taylor’s death. Based on the record before us, an appellate court’s vacating one of Rice’s convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury’s verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order—an order that adjudges Rice guilty of Taylor’s murder and sentences him for that single offense.’
“Rice, 766 So.2d at 152-53.”
Carlisle v. State, 963 So.2d 170, 170-71 (Ma.Crim.App.2006).
Therefore, Brown’s convictions for two counts of felony murder cannot stand. We remand this case to the circuit court with directions for that court to enter a new order adjudging Brown guilty of murder and sentencing him for that single offense. The circuit court shall take all necessary action to ensure due return to this Court at the earliest possible time but no later than 42 days after the release of this opinion.
REMANDED WITH DIRECTIONS. 
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).